

80 King Street, Suite 800, St. Catharines, Ontario, L2R 7G1      Tel:(905) 988-2600 Fax:(905) 988-1803
www.seawaymarinetransport.com

December 19, 2003 Draft

To:  James A. Palladino
     Auggie Palladino
     3203 Harvard Avenue
     Newburgh Hts., Ohio  44105

Letter of Intent between Kellstone Inc. and Inland Bulk Transfer Co., both wholly owned subsidiaries of J.A.P. Holding Company and hereinafter collectively referred to as "Seller" and Seaway Marine Transport acting on behalf of a U.S. company, to be incorporated, in which it shall be a 25% owner, such company hereinafter referred to as "Buyer".

This Letter of Intent is an expression of the interest of the parties with respect to a possible purchase and sale (the "Acquisition") of the Assets (defined below) and is subject to the terms and conditions set forth below and the execution and delivery of a mutually satisfactory Agreement of Purchase and Sale. The parties will become legally obligated with respect to the purchase and sale of the Assets only in accordance with the terms contained in the Agreement of Purchase and Sale if, as and when such document has been executed and delivered by the parties. In the meantime, this Letter of Intent is intended to facilitate further discussion and disclosure.

1.  Assets

On the date of the consummation of the Acquisition (the "Closing"), Buyer will purchase the assets (the "Assets") set forth below:

(a)  Tugs

     James Palladino
     Frank Palladino Jr.
     Benjamin Ridgway

(b)  Barges

     Kellstone #1
     #2401 Stevens

2.  Purchase Price

The purchase price for the Assets is US $12,000,000.00 (twelve million United States dollars) and will be paid to Seller on the Closing Date (as defined below) in immediately available funds.

3. **Additional Terms**

(a) Seller shall give the Buyer clear title to the Assets, free and clear of all charters, claims, encumbrances, mortgages, maritime liens or possessory liens or debts of any kind.

(b) Seller shall be responsible for the proper lay-up of the Assets during the 2003-04 winter season and shall maintain insurance at its own expense until the Closing Date to cover the costs of repairing any damage to the Assets during the period from the commencement of the winter 2003-04 lay-up through the Closing Date.

(c) Buyer's representative shall be entitled to be present at the lay-up of the Assets and shall be entitled to inspect the Assets from time to time during lay-up, but Buyer shall have no responsibility for the lay-up of the Assets. It is understood that the Assets are in good working order as of the date hereof and accordingly, Seller shall indemnify Buyer for any damage to the Assets arising from improper or inadequate lay-up.

4. **Conditions**

The execution of an Agreement of Purchase and Sale of the Assets shall be conditional upon the completion of all of the following:

(a) Seller having provided Buyer for its review and acceptance all records and information in their possession concerning the speed, carrying capacity, fuel consumption, unload speed, crewing arrangements, maintenance records and logs relating to the Assets;

(b) Buyer having obtained final approval by its Board of Directors and of its parent companies, Algoma Central Corporation and Upper Lakes Group Inc.;

(c) Buyer and Seller having obtained all requisite regulatory and bank approvals for the purchase and sale of the Assets;

(d) The execution by Buyer and Lafarge North America Inc. of a ten year barge transportation agreement for the full utilization of the Assets; and

(e) Kellstone, Inc. and Riverdock, Inc., having entered into an Asset Purchase Agreement and related agreements with Lafarge North America Inc., with respect to the sale of certain assets on terms satisfactory to Kellstone, Inc. and Riverdock, Inc., in their sole discretion.

5. **Disclosure**

Except as and to the extent required by law, without the prior written consent of the Seller, Buyer and its representatives will not, directly or indirectly, make any public comment, statement or communication with respect to, or otherwise disclose or permit the disclosure of the existence of discussions regarding a possible transaction between the parties or any of the terms, conditions or other aspects of the transaction proposed in this Letter of Intent

It is contemplated that upon satisfaction of the foregoing conditions, Buyer and Seller shall execute a final and binding Agreement of Purchase and Sale and that such sale will be completed

on or before February 29, 2004, unless such other date is otherwise agreed by the parties hereto (the "Closing Date").

Please signify your agreement with the foregoing by executing a copy of this Letter of Intent and returning it to my attention.

Yours truly,

SEAWAY MARINE TRANSPORT

Wayne A. Smith
Vice-President and General Manager

Understood, accepted and agreed to this
30th day of December, 2003 by Kellstone Inc. and Inland Bulk Transfer Co.

per August Palladini
Name/Title: Vice President

Tug and Barge LOI.doc